**E-FILED**
Wednesday, 03 December, 2014 01:49:51 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 12-30098 |
| | ) | |
| LEON DINGLE, JR., and KARIN DINGLE, | ) | |
| | ) | |
| Defendants. | ) | |

# OPINION

RICHARD MILLS, U.S. District Judge:

Pending before the Court is the Government's Motion to Use Leading Questions of a Witness on Direct Examination. The Government has filed a Supplement to the Motion. Defendant Leon Dingle, Jr., has filed a Response to the Motion.

Rule 611(c) of the Federal Rules of Evidence provides that in most circumstances, leading questions are not allowed on direct examination. However, leading questions may be used "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c)(2).

Specifically, the Government seeks permission to use leading questions on direct examination if it calls Dr. Eric Whitaker, the Director of Illinois Department of Public Health (DPH) from 2003 until September of 2007. Attached to the Government's Supplement is the cooperation agreement executed between the Government and Dr. Whitaker and his counsel. Dr. Whitaker agreed to "provide complete and truthful information to law enforcement officials regarding his conduct and everything he knows or has reason to believe about the conduct of others," in exchange that the information could not be used against him.

In a related case, Quinshaunta Golden, who Dr. Whitaker hired in 2003 as Chief of Staff at DPH, was indicted and pled guilty to bribery, theft and obstruction of justice charges. Ms. Golden was Chief of Staff at DPH until 2008. During this time period, Dr. Whitaker and Ms. Golden were responsible for the management of DPH, including its grant programs and the implementation of various programs during the Blagojevich administration as discussed throughout this case. The Government claims that Ms. Golden, an alleged co-conspirator, steered millions of dollars in

grants to Dr. Dingle.

The Defendant notes that all of this occurred over seven years ago. Moreover, the Defendant alleges that the fact that Dr. Dingle and Dr. Whitaker attended a dinner and concert with a group of people during a trip to Las Vegas for a bird flu summit seven years ago does not establish that Dr. Whitaker is a witness "identified with an adverse party."

Attached to the Government's supplement and to Dr. Dingle's response is the affidavit of Henry E. Hockeimer, Jr., Dr. Whitaker's counsel, which is dated September 29, 2014. Counsel's affidavit states that when the Government asked Dr. Whitaker a "questions of a personal nature that were irrelevant to its investigation, I directed Dr. Whitaker not to answer those questions."

One of the Government's witnesses testified that she observed Ms. Golden engaged in what appeared to be a sexual encounter with Dr. Dingle. The Government notes that during cross-examination of a Government witness, Counsel for the Defendant elicited information that suggested Dr. Whitaker and Golden also had a personal relationship while they were

employed at DPH. The Government states that, when interviewed by law enforcement agents, Dr. Whitaker refused to answer any questions about his personal relationship with Golden. After Golden was indicted, Dr. Whitaker represented to the media that he was fully cooperating with the investigation. The Government claims that between the spring of 2014 to shortly before the trial began in October of 2014, Dr. Whitaker refused repeated Government requests to answer further questions. On October 1, 2014, Dr. Whitaker's counsel advised the Government that Dr. Whitaker refused to meet. The Government claims that Dr. Whitaker has failed to comply with the cooperation agreement in total and not just refused to answer personal questions.

Mr. Hockeimer's affidavit provides that when the Government sought to continue the interview with Dr. Whitaker, they continued to decline to answer any questions of a personal nature. However, Mr. Hockeimer states that if called to testify at Dr. Dingle's trial, Dr. Whitaker would truthfully answer any questions not subject to a sustained objection.[1] Mr. Hockeimer

---

[1]The Court has also received via fax a letter from Mr. Hockeimer dated December 3, 2014. The letter stated that Dr. Whitaker is in California on

states that Dr. Whitaker “has no personal, business, or other relationship with Dr. Dingle.”

The Government claims Dr. Whitaker is a witness identified with an adverse party, Dr. Dingle, and an alleged co-conspirator, Ms. Golden. The Government further claims that Dr. Whitaker is a hostile witness. Moreover, the Government alleges that its evidence shows that he has direct and possibly exclusive knowledge concerning Dr. Dingle and Golden.

The Defendant asserts there has been no evidence that Dr. Dingle and Dr. Whitaker had any relationship outside that involving grant programs from 2005-2007. Although many of the witnesses have testified to having some form of relationship with Dr. Dingle while working on the grant programs, the Government has not sought to use leading questions during the direct examinations of those individuals. Moreover, there has been no evidence presented regarding a personal relationship from 2008 to the present.

---

business and will not return until late Thursday night. The letter further provides he has business commitments on Friday, December 5, 2014. Accordingly, Mr. Hockeimer requests that if Dr. Whitaker is called to testify in this matter, that it be on Monday December 8, 2014.

The Government further asserts that the fact Dr. Whitaker, through counsel, first provided the Defendant with an affidavit, establishes that Dr. Dingle is a witness identified with an adverse party and is a witness clearly hostile to the Government. The Defendant contends that this courtesy between attorneys does not establish that Dr. Whitaker is identified with Dr. Dingle.

The Court recognizes that the use of leading questions is an undesirable practice on direct examination and Rule 611(c) must thus be applied with caution. The Government has presented significant evidence that Dr. Whitaker and Dr. Dingle had a relationship at the time relevant to matters at issue in this trial. Given that and Dr. Whitaker's refusal to comply with the cooperation agreement, it appears there is a basis to finding that he is a witness identified with Dr. Dingle and a witness hostile to the Government.

However, the Defendant has a strong argument that the assertions of the parties and the affidavit of counsel cannot establish whether Dr. Whitaker is a hostile witness. The Court should observe the witness before

making such a determination. United States v. Brown, 603 F.2d 1022, 1025-26 (1st Cir. 1979) ("It has long been established that in the use of leading questions much must be left to the sound discretion of the trial judge who sees the witness and can, therefore, determine in the interest of truth and justice whether the circumstances justify leading questions to be propounded to a witness by the party producing him." (Internal quotation marks and citations omitted). Accordingly, the Court will Allow the Government to call Dr. Whitaker and submit an offer of proof outside the presence of the jury.

Ergo, the Government's Motion to Use Leading Questions of a Witness on Direct Examination [d/e 106] is ALLOWED in Part, to the extent that the Government is granted leave to call Dr. Whitaker and submit an offer of proof outside the presence of the jury.

ENTER: December 3, 2014

FOR THE COURT:

s/Richard Mills
Richard Mills
United States District Judge